In re **ENERGY COOPERATIVE, INC.,** Debtor.

**ENERGY COOPERATIVE, INC.,** Plaintiff,

v.

**BELL FUELS, INC.,** Defendant.

Nos. 81 B 5811, 85 C 3562 and 83 A 1464.

United States District Court, N.D. Illinois, E.D.

May 11, 1989.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter is before the court on defendant's motion for summary judgment. For the following reasons, defendant's motion is granted.

### FACTS

Plaintiff, Energy Cooperative, Inc. ("ECI") through its Trustee in Bankruptcy ("Trustee") seeks to recover alleged preferential transfers made to Bell Fuels by ECI during the 90–day period prior to the filing of ECI's Chapter 11 petition on May 15, 1981 pursuant to 11 U.S.C. § 547. The complaint contains one aggregate claim for $2,189,210 representing the total alleged preferential payments. ECI seeks an order avoiding these transfers and entering a judgment for this amount against Bell Fuels.

ECI and Bell Fuels were parties to three exchange agreements, Contracts 833, 834 and 880. Bell Fuel's supplying of fuel under these agreements was frequently accomplished by book transfer. Although no physical delivery took place, each party recorded the book transfers as if product actually moved. ECI concedes that all transfers under Contract 834, and certain transfers under Contract 833 are not recoverable.

Bell Fuels alleges that all of the transfers made pursuant to these contracts during the 90–day period preceding bankruptcy satisfy the requirements of Section 547(c)(2) for an exception to the preference payment rule, thus preventing the Trustee from avoiding what would otherwise have been "preferential transfers."

Specifically, this motion presents two issues for resolution. First, under Contract 833, Bell Fuels alleges that an April 16, 1981 book transfer of 1,963,122 gallons of product from Bell Fuels to ECI is within the 45–day rule. The 45–day rule is a reference to Section 547(c)(2)(B) of the Bankruptcy Code. This requirement of paying a debt not more than 45 days after the debt was incurred will be discusseed in greater detail.

ECI asserts that the proper dates to use for the 45–day rule analysis are between February 10 and February 21, 1981, and not the April 16, 1981 date utilized by Bell Fuels. The book transfer in question under Contract 833 was a four-party transfer—ECI to Horizon Oil to Englehardt Oil to Bell Fuels and back to ECI. Pursuant to this multi-party transfer, ECI asserts that when Horizon Oil received product from ECI (between February 10 and February 21, 1981), the debt was "incurred" for the purpose of the present dispute with Bell Fuels. This dispute gives rise to the issue of determining the date a debt is "incurred" when a product is transferred under a "multi-party book transfer."

Second, the Trustee asserts Bell Fuel's analysis showing a receipt under Contract 833 creating a debt satisfied by deliveries under Contract 880 is improper. Bell Fuel's alleges that the Trustee has waived his right to ask the court to treat the exchange activity between Bell Fuels and ECI as three separate and distinct streams of business since the Trustee's complaint and supporting exhibits address the transactions in the aggregate.

### DISCUSSION

To the extent that the law regarding motions for summary judgment and Section 547 of the bankruptcy code is applicable to this ruling, the court incorporates by reference its memorandum opinion in *Energy Cooperative, Inc. v. U.S.A. Rookwood*, issued on February 22, 1989. 97 B.R. 388. This includes the analysis of both this court's holding in *Energy Cooperative Inc. v. Fina*, Civ 85C 4259, Dec. 12, 1986 (slip opinion) and the Seventh Circuit ruling in *Barash v. Public Finance Corp.*, 658 F.2d 504 (7th Cir.1981).

#### A.

The transfer in question under Contract 833 was a four-party transfer. This transfer ran from ECI to Horizon Oil to Englehardt Oil to Bell Fuels and back to

ECI. The obligation from ECI to Horizon arose by transfers of product from Horizon to ECI between February 10 and February 21, 1981. (Trustee's Rule 12(m) Statement, ¶ II.6). ECI argues, therefore, that the debt was "incurred" for purposes of Section 547(c)(2) between February 10 and February 21, 1981, rather than when the four-party book transfer was made on April 16, 1981. The events of April 16, 1981 are those which resulted in product being placed in Bell Fuel's name at the ECI terminal, and the only proper date to use for Section 547(c)(2) analysis for several reasons.

The evidence in this case shows that Bell Fuels had no contact with Horizon Oil, and no involvement whatsoever in the February 1981 transfers between Horizon and ECI. The nature of this four-party agreement is discussed at length in Mr. Troch's (director of Bell Fuels) deposition. Actual title to physical product passes through these multi-party book transfers, and Bell Fuels' was only involved in the April 16, 1981 transfer. Nothing in the evidence indicates that Bell Fuels made anything but a transfer in the ordinary course of business, nor that Bell Fuels was attempting to manipulate the debtor to obtain favor over other creditors. Further, as discussed in Bell Fuels' brief, although the *Barash* definition of when a debt is incurred does not state that the property interest giving rise to the debt must be to the particular preference defendant involved in the particular litigation, this is a logical and reasonable reading of *Barash*. 658 F.2d at 509.

Also, the bankruptcy court in this district has invoked a test to determine the date when a debt was incurred if this fact is in issue:

> If the debtor had filed Chapter 11 before the invoice date but after the shipment date, it is hard to imagine (that) the defendant would have been unable to assert a claim in the case. (cites omitted).

*In re Demetralis*, 57 B.R. 278, 284 (Bankr. N.D.Ill.1986). Bell Fuels, applying this test, asserts that unless Bell had the legal right to file such a claim against ECI before the April 16 book transfer date, it cannot be said that ECI had any corresponding debt to Bell Fuels before that date. Bell Fuels could not have a legal claim against ECI for the product in question until after April 16 when the book transfer was recorded. The debt, therefore, was incurred on April 16, 1981 and the transfer satisfies all four requirements of the preference exception of Section 547(c)(2) of the bankruptcy code.

### B.

Bell Fuels asserts, supported by affidavit of Mr. Troch, that the parties used separate contract numbers for bookkeeping purposes only and did not intend to create segmented business relationships between ECI and Bell Fuels. Mr. Nelson stated in his affidavit, that "(r)egardless of whether the parties made an actual or book transfer of product, ECI always allocated the transfer to a particular contract number." Nelson aff., ¶ 6. ECI asserts that because ECI and Bell Fuels directed that deliveries be applied to specific contracts, all payments made by ECI during the 90 days preceding bankruptcy with respect to Contract 880 are recoverable preferences, since the last receipt under Contract 880 was on February 26, 1980, well outside the requisite 45–day period. The $30,015 in transfers under contract 880, were not treated separate and apart from the other transactions between Bell Fuels and ECI in the Trustee's complaint. Further, no authority is cited which mandates this preclusive interpretation of the parties' ongoing business transactions. Mr. Nelson's assertion that a number was "always" applied to a particular transfer is inapposite from Mr. Troch's assertion that to each transfer a number was assigned but that this was done for convenient bookkeeping. Therefore, ECI's attempted isolation of transactions under Contract 880 does not give rise to material questions of fact, precluding summary judgment.

### CONCLUSION

For the reasons stated, Bell Fuels, Inc.'s motion for summary judgment in its favor is granted.

It is so ordered.